IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GWENDOLYN STOVER, | ) |
| *Plaintiff/Third-Party Plaintiff* | ) |
| v. | ) |
| FAIR COLLECTIONS & OUTSOURCING, INC., | ) Civil Action No. 1:14-cv-00809 (RJL) |
| *Defendant* | ) |
| v. | ) |
| EDGEWOOD MANAGEMENT CORPORATION, A Maryland Corporation | ) |
| *Defendant* | ) |

## 2nd AMENDED COMPLAINT

Plaintiff Gwendolyn Stover ("Stover") hereby submits her 2nd Amended Complaint against Edgewood Management Corporation ("Edgewood") for violations of the Fair Credit Reporting Act ("FCRA"), breach of contract, breach of the implied covenant of good faith and fair dealing, false light invasion of privacy, and conversion.[1]

## I.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 in that the FCRA claims involve a federal question. Supplemental jurisdiction over the other claims may be exercised under 28 U.S.C. § 1367.

---

[1] Stover's 2nd Amended Complaint is filed without leave as permitted by Fed. R. Civ. P. 15(a)(1)(B).

2. Venue is proper under 28 U.S.C. § 1391(b)(2) in that the conduct giving rise to Stover's claims occurred in this jurisdiction.

## II.

## PARTIES

3. Stover is a sui juris adult resident within the District of Columbia.

4. Stover is a consumer as defined by 15 U.S.C. §1692a(3) and District of Columbia Code § 28-3901(a)(2) in that the alleged debt for apartment damages was incurred for personal, family or household purposes.

5. Edgewood is a professional corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 20316 Seneca Meadows Parkway, Germantown, Maryland, 20876. At all relevant times, Edgewood was engaged in, inter alia, the business of managing, operating and/or owning a multi-building apartment complex known as Trenton Park Apartments located in Washington, D.C.

6. Edgewood is, and at all times mentioned herein was, a "furnisher" as defined by 15 U.S.C. §1681s-2 in that it regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about their transactions or experiences with consumers.

## III.

## FACTUAL ALLEGATIONS

8. Stover was a resident of the District of Columbia Housing Authority located at 3508 6th Street SE, Apt. 10, Washington DC 20032 ("Premises") for nearly 30 years.

9. At the inception of the tenancy, Stover was required to submit a security deposit in the amount of $1,500.00 in order to take possession of the Premises.

10. In early September 2013, Stover submitted her notice of intent to vacate the Premises.

11. On September 12, 2013, the Premises were inspected by Edith Wilson ("Wilson") of Edgewood Management Co. ("Edgewood") whose "Summary Decision on Unit" certified that the Premises "passed" inspection.

12. The only damages attributed to Stover on Wilson's "Inspection Checklist" was an interior door that had a "defective/missing frame" and "defective/missing hardware."

13. On September 27, 2013, Stover received a "Landlord Certification" from Edgewood that any Housing Quality Standard violations for the Premises had been corrected.

14. Stover vacated the premises on or about November 1, 2013.

15. On November 12, 2013, unbeknownst to Stover, Edgewood forwarded Stover's account to Fair Collections & Outsourcing, Inc. ("FCO") for alleged damages to the Premises in the amount $1,708.67.

16. In an effort to coerce payment from Stover, Edgewood furnished, or caused to be furnished, derogatory information regarding the alleged debt to national credit bureaus.

17. On or about March 8, 2014, Stover received a dunning letter from FCO claiming Stover owed a debt in the amount of $1,708.67 for damages to the Premises.

18. On March 26, 2014—in response to Stover's dispute of the alleged debt—FCO allegedly verified the debt by producing a ledger report dated November 4, 2013 that listed an assortment of damages to the Premises.

19. On May 26, 2014, after being notified of this lawsuit, Edgewood began investigating Stover's claim, including the alleged balance owed.

20. Edgewood employees admitted in internal communications that the amount allegedly owed by Stover, and previously reported to national credit bureaus, was incorrect.

21. Despite having actual knowledge that the derogatory tradeline information was inaccurate, Edgewood failed to investigate and correct the information furnished to national credit bureaus despite repeated disputes from Stover.

22. Stover denies that any debt is owed to Edgewood or that she caused any damages to the Premises.

23. Edgewood's actions are intentional, willful, malicious and in open defiance of state and federal consumer protection statutes.

24. Stover has been severely agitated, annoyed, traumatized, emotionally damaged, and unduly inconvenienced by the Defendants' misconduct.

## IV.

## **FIRST CLAIM FOR RELIEF**

## **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

## **15 U.S.C. § 1681 ET SEQ.**

25. Stover repeats, re-alleges and incorporates by reference paragraphs 1-24.

26. Edgewood violated 15 U.S.C. §1681s-2(a)(1)(A) by furnishing or causing to be furnished false, inaccurate, and derogatory information regarding Stover to national credit reporting agencies with actual knowledge the derogatory information was inaccurate.

27. Edgewood violated 15 U.S.C. § 1681s-2(a)(2) *et seq.* by breaching its duty to correct and update its false, inaccurate, and derogatory information regarding Stover to credit reporting agencies despite actual knowledge the derogatory information was inaccurate.

28. Edgewood, by its willful noncompliance with the FCRA, is liable to Stover for punitive damages as prescribed by 15 U.S.C. § 1681n(a)(2).

29. Edgewood by its negligent noncompliance with the FCRA, is liable to Stover for actual damages as prescribed by 15 U.S.C. § 1681o(a)(1)(A).

## SECOND CLAIM FOR RELIEF

## BREACH OF CONTRACT

30. Stover repeats, re-alleges and incorporates by reference paragraphs 1-29, inclusive, above, as if fully set forth herein.

31. A valid and enforceable rental agreement existed between the parties, or a predecessor in interest, for approximately thirty years.

32. Stover performed her obligations under the contract.

33. Edgewood breached the contract by virtue of the following actions:

- Failing to notify Stover in writing of Edgewood's intent to withhold Stover's security deposit to pay for the alleged damages within forty-five days after termination of the tenancy as required by 14 DCMR § 309.1;

- Failing to provide Stover with an itemized statement of the repairs for which Stover's security deposit was applied within thirty days thereafter as required by 14 DCMR § 309.2;

- Failing to comply with § 309.1 and § 309.2 constitutes prima facie evidence that Stover is entitled to full return, including interest as provided in 14 DCMR § 311, of any deposit or other payment made by Stover as security for performance of her obligations under the tenancy;

- Wrongfully retaining Stover's security deposit; and

- Edgewood's breach has caused Stover to suffer damages.

## THIRD CLAIM FOR RELIEF

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

34. Stover repeats, re-alleges and incorporates by reference paragraphs 1-33, inclusive, above, as if fully set forth herein.

35. Edgewood breached their implied duties and violated the standards of decency, fairness, and reasonableness by facilitating FCO's subsequent debt collection contact with Stover by falsely representing Stover caused damages to the Premises.

36. Edgewood breached their implied duties and violated the standards of decency, fairness, and reasonableness by facilitating FCO's subsequent debt collection contact with Stover after failing to notify her within forty-five days after termination of the tenancy of its intent to withhold the security deposit to pay for the alleged damages.

37. Edgewood breached their implied duties and violated the standards of decency, fairness, and reasonableness by facilitating FCO's subsequent debt collection contact with Stover after failing to provide her with an itemized statement of the repairs within seventy-five days after termination of the tenancy for which Stover's security deposit was applied.

38. As a result of Edgewood's conduct, Stover has suffered, and continues to suffer, economic losses and other damages, including attorney's fees and costs of suit.

39. Edgewood has acted in bad faith and with malice by engaging in the aforementioned business practices, and therefore, Stover is entitled to an award of punitive damages.

## **FOURTH CLAIM FOR RELIEF**

### **INVASION OF PRIVACY – FALSE LIGHT**

40. Stover repeats, re-alleges and incorporates by reference paragraphs 1-39, inclusive, above, as if fully set forth herein.

41. Edgewood placed, or caused to be placed, Stover in a false light by virtue of furnishing false, inaccurate, and derogatory information to national credit reporting agencies with actual knowledge the information was false.

42. Edgewood's false, inaccurate, and derogatory information regarding Stover was publically disclosed to national credit reporting agencies.

43. Edgewood's derogatory tradeline information was false.

44. Edgewood's false, inaccurate, and derogatory information is of and concerning Stover, and persons who read her credit report would reasonably understand the references therein to be references to Stover.

45. Edgewood's false, inaccurate, and derogatory tradeline information would be highly offensive to a reasonable person.

46. Edgewood's false, inaccurate, and derogatory tradeline information was furnished with knowledge of its falsity or with a reckless disregard for the truth or falsity of the information.

47. Edgewood's false, inaccurate, and derogatory tradeline information was furnished in a grossly irresponsible manner and with want of due care.

48. Edgewood's statements are not privileged communications.

49. As a direct and proximate result of the above-described conduct by Edgewood, Stover has suffered general and special damages including without limitation damage to Stover's reputation and standing in the community.

## FIFTH CLAIM FOR RELIEF

### CONVERSION

50. Stover repeats, re-alleges and incorporates by reference paragraphs 1-49, inclusive, above, as if fully set forth herein.

51. Stover had a property right to a specific, identifiable fund of money in the amount of $1,500.00 held in escrow by Edgewood, or a predecessor interest, representing Stover's security deposit for the Premises.

52. Edgewood unlawfully exercised dominion and control over the personal property of Stover in derogation of her rights by wrongfully converting Stover's $1,500.00 deposit for Edgewood's own use.

53. As a result of the Edgewood's misconduct, Stover has suffered damages.

## JURY DEMAND

Stover demands trial by jury on any and all counts for which trial by jury is permitted by law.

DATED:  December 22, 2014					Respectfully submitted,

					 /s/    Dean Gregory
					Dean Gregory (Bar No. 1008846)
					**LAW OFFICES OF DEAN GREGORY**
					1717 K Street NW
					Suite 900
					Washington, D.C. 20006
					Telephone: (202) 905-8058
					Facsimile: (202) 776-0136
					E-mail: dean@deangregory.com

					*Attorney for PLAINTIFF*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2014, I caused a copy of the foregoing *2nd Amended Complaint* to be served via CM/ECF system on the following counsel:

Mr. William C. Casano, Esquire
**GREENSTEIN DELORME & LUCHE, P.C.**
1620 L St NW
Suite 900
Washington, DC 20036
Telephone: (202) 452-1400, ext. 5409
Facsimile: (202) 452-1410
Email: wcc@gdllaw.com

Ms. Debra Fischer Leege, Esquire
**GREENSTEIN DELORME & LUCHE, P.C.**
1620 L St NW
Suite 900
Washington, DC 20036
Telephone: (202) 452-1400
Facsimile: (202) 452-1410
Email: dfl@gdllaw.com

*Attorneys for DEFENDANT EDGEWOOD MANAGEMENT CORPORATION*

/s/   Dean Gregory
Dean Gregory